UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                                }
                                      }
JUSTIN and TABITHA WHEELER,            }
                                      }  Case No. 09-41866-JJR-13
              Debtors.                 }

## OPINION AND ORDER

This matter came before the Court on the Debtors' Contest of Claim (Doc. 39) in which they objected to the priority status of the $1,257 claim (Claim 14) filed in their joint chapter 13 case by the State of Alabama Department of Human Resources ("DHR").  DHR filed a Response (Doc. 42) and Memorandum of Law (Doc. 46) in opposition to the Debtors' Contest of Claim.  DHR argues that its claim is entitled to priority status as a domestic support obligation under Section 507(a)(1)(B) of the Bankruptcy Code.[1]  The Debtors admit they are indebted to DHR for $1,257 but assert DHR's claim is a general unsecured claim, not one entitled to priority.  The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order.  In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of facts and conclusions of law.[2]

---

[1] 11 U.S.C. § 101 *et seq*, and herein the "Bankruptcy Code" or "Code."  Unless the context indicates otherwise, all "Section" references are to a section, subsection or other subdivision of the Code.

[2] All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

For the reasons stated below, the Court finds that DHR's claim is a domestic support obligation and the Court is, therefore, overruling the Debtors' objection to the priority status of DHR's claim.

FINDINGS OF FACT:

The facts are not complicated and were stipulated by the parties or can be gleaned from the Debtors' schedules and confirmed chapter 13 plan. The Debtors applied for food stamp benefits through DHR for the children in their household. The application was approved based on their current income reported on the application. After the benefits commenced, the Debtors' income increased but they failed to report the increase to DHR, resulting in an overpayment of benefits. Some of the overpayments were recouped, but as of the petition date the unpaid balance was $1,257. DHR filed a proof of claim in the amount of $1,257 and asserted its claim was entitled to priority status as a domestic support obligation. Schedule F filed by the Debtors listed an unsecured *nonpriority* claim owing to the State of Alabama Human Resources Food Stamp Department in the amount of $1,200.[3]

The Debtors' disposable income is less than the median for an Alabama household of their size so their disposable income was not determined under Section 1325(b)(3) but was calculated under Schedule J. Their Schedule J indicated a monthly net income of $140.00, yet their confirmed plan (Doc. 28) proposed to pay $239.00 each month over a commitment period of 3 years. The monthly payments will pay nothing to unsecured creditors, whether priority or nonpriority, and will

---

[3] Without further explanation, DHR's claim was described in Schedule F as a "Line of Credit."

only pay the Debtors' secured automobile loan and administrative expenses.

The issues in this case may be decided by applying the plain language of the Bankruptcy Code to the foregoing facts.

CONCLUSIONS OF LAW:

In no uncertain terms, Section 507(a)(1) elevates all claims for domestic support obligations to priority status:

> (a) The following expenses and claims have priority in the following order:
>
> (1) First:
>
> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.
>
> (B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

11 U.S.C. § 507(a)(1)(A), (B).

Thus, the determination of whether DHR's claim is entitled to priority status begins with an

3

Case 09-41866-JJR13    Doc 47    Filed 02/05/10    Entered 02/05/10 14:34:46    Desc Main
Document      Page 3 of 9

examination of the meaning under the Code of the term "domestic support obligation" ("DSO").

Section 101(14A) defines a DSO as –

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
>
> > (A) owed to or recoverable by –
> >
> > > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > > (ii) a governmental unit;
> >
> > (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> >
> > (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
> >
> > > (i) a separation agreement, divorce decree, or property settlement agreement;
> > > (ii) an order of a court of record; or
> > > (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> >
> > (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purposes of collecting the debt.

11 U.S.C. § 101(14A).

By extracting from the Code's definition of a DSO only those provisions that apply to the facts in this case, it may be simplified to read as follows: "[DSO means] a debt . . . owed to . . . a governmental unit . . . in the nature of . . . maintenance, or support (including assistance provided by a governmental unit) . . . of [a] child of the debtor . . . ." The debt owing by the Debtors to DHR,

4

a governmental unit, arose from food stamp benefits provided by DHR for the maintenance and support of the Debtors' children.[4] Thus, under the plain meaning of Section 101(14A), the Court finds the Debtors' obligation to DHR is a claim for a DSO that is entitled to priority status under Section 507(a)(1).[5] And because the claim is owed directly to DHR, a governmental unit, its priority status is determined under subparagraph (B) of Section 507(a)(1).

The above ruling, finding that DHR's claim is entitled to priority status, leaves unresolved issues not raised by either the Debtors or DHR. Specifically, are the Debtors required to pay DHR's priority claim, and if so how much and over what commitment period? If the claim is not paid in full under the Debtors' plan, will it nevertheless be discharged if the plan is successfully completed? No attempt will be made by the Court to resolve these issues in this Opinion, other than a brief discussion of the interplay between Sections 507(a)(1)(B) and 1322(a)(4), and the nondischarge of a DSO that is not paid through a chapter 13 plan.

Section 507(a)(1) elevates all DSO claims to priority status, and except as discussed in footnote 6, *infra*, DSO claims enjoy the highest ranking among priority claims. Subparagaraph (A)

---

[4]The DSO claim owing to a governmental unit must also have been determined in accordance with applicable nonbankruptcy law by such governmental unit. Section 101(14A)(C)(iii). The benefits to which the Debtors were entitled for their children were determined in accordance with nonbankruptcy laws and regulations establishing food stamp eligibility based on family size and income.

[5]In support of its argument, DHR cited *Wisconsin Dept. of Workforce Develop. v. Ratliff*, 390 B.R. 607 (E.D. Wis. 2008). The facts and issues in *Ratliff* were virtually identical to those in the instant case. In *Ratliff*, the district court reversed the bankruptcy court's order denying priority status to a government food stamp provider's claim that was based on overpayment of food stamp benefits. *Id*. at 617. The district court held that the debtor's obligation for the overpayment constituted a DSO that was entitled to priority status under Section 507(a)(1)(B). *Id*. The opinion in *Ratliff* provides a more thorough examination of the issues presented, but essentially reaches the same conclusion as this Court based on the plain meaning of the Code and in particular the Code's definition of a DSO.

5

of Section 507(a)(1) provides that a DSO owing by a debtor to "a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative" ( "DSO Obligee"), or a governmental unit which filed a claim on behalf of a DSO Obligee, is entitled to first-tier status among DSO claims. 11 U.S.C. § 507(a)(1)(A). Subparagraph (B) of that Section provides that a DSO assigned by a DSO Obligee to a governmental unit (other than a voluntary assignment for purpose of collection) or, as in this case, owing directly to a governmental unit under nonbankruptcy law, is entitled to second-tier status among DSO claims. 11 U.S.C. § 507(a)(1)(B). That is to say, with few exceptions, all DSO claims are entitled to the highest level of priority under Section 507(a), but among competing DSO claims, those owing to a governmental unit, other than by virtue of a voluntarily assignment for collection, are subordinate to DSO claims owing to DSO Obligees.[6]

Section 1322(a)(2) requires that a chapter 13 plan must provide for full payment of all priority claims; but there is an exception. That exception, found in Section 1322(a)(4), permits less than full payment of a DSO claim if that claim is owing under subparagraph (B) of Section 507(a)(1) – most DSO claims owing to governmental units – "if the plan provides that all the debtor's projected disposable income for a 5-year period . . . will be applied to make payments under the plan."[7] 11 U.S.C. § 1322(b)(4).

---

[6] To say DSO claims have the highest priority is not completely accurate. Section 507(b) provides that under certain circumstances a claim for failed adequate protection will trump all other priority claims, including DSO claims, and in some instances subparagraph (C) of Section 507(a)(1) elevates administrative expenses allowed under Sections 503(b)(1)(A), (2), (6) above DSO claims.

[7] Congress recognized the quandary that would face debtors who need chapter 13 relief in order to support their dependents, yet would be prohibited from obtaining such relief if a substantial DSO obligation owed to a governmental unit must be paid in its entirety during the pendency of the case:

6

The term "projected disposable income" is found in both Sections 1322(a)(4) and 1325(b)(1), but is defined in neither of these sections nor elsewhere in the Code. Nonetheless, the term "disposable income" is defined in Section 1325(b)(2) as meaning "current monthly income [defined in Section 101(10(A)] received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . . [and] for charitable contributions." 11 U.S.C. § 1325(b)(2). Section 1325(b)(3) requires that amounts reasonably necessary to be expended to determine disposable income are to be determined in accordance with subparagraphs (A) and (B) of Section 707(b)(2) for above median income debtors.[8] 11 U.S.C. §

---

Section 1322(a)(4), enacted in 2005, was added in recognition of the fact that some debtors have very large support obligations owed to governmental units, and that requiring those obligations to be paid in full in a chapter 13 plan would make chapter 13 impossible for such debtors. This in turn could leave those debtors saddled with debt, and perhaps subject to foreclosure or repossessions, all of which would greatly undercut their ability to support their dependents, defeating the purpose of other 2005 amendments that were intended to increase support payments. To alleviate this problem, section 1322(a)(4) excuses the debtor from making full payment of domestic support obligations entitled to priority under section 507(a)(1)(B) if the plan provides that all of the debtor's disposable income for five years, the maximum plan period, is devoted to plan payments. This provision enables a chapter 13 debtor to cure a mortgage default, save a family vehicle, or otherwise use chapter 13 even if the debtor cannot pay the domestic support obligations owed to a governmental unit in full. Of course, those obligations remain nondischargeable, so the debtor would continue to be obligated to pay them after the case is concluded.

A. Resnick & H. Sommer, Collier on Bankruptcy ¶ 1322.03[5] (15th Ed. Rev. 2006).

[8]Section 1325(b)(2) expressly limits its prescribed formula for calculating disposable income to "this subsection." Nonetheless, that formula is the only one in the Code for determining "disposable income." In this Court's view, because of the close relationship between required plan content under Section 1322 and plan confirmation under Section 1325, it is reasonable to apply the formula in Section 1325(b) for disposable income to Section 1322(a)(4). Moreover, because it has no impact on the issues determined by this opinion, the Court intentionally avoids addressing what the term "projected" might add to the meaning of

7

1325(b)(3). The Debtors' income in this case is below the median, so their disposable income for the purposes of Sections 1322 and 1325 equates, in this judge's opinion, to their "monthly net income" determined by the calculations in Schedules I and J.[9] According to the Debtors' Schedules I and J, their monthly net income on the petition date was $140.00.

Sections 1328(a)(2) and 523(a)(5) exclude an unpaid DSO from the discharge otherwise granted to a debtor after completion of his chapter 13 plan. Unlike Section 1322(a), this exclusion from discharge makes no distinction between DSO claims falling under subparagraphs (A) and (B) of Section 507(a)(1). Thus, the Debtors in this case might consider amending their plan to increase the commitment period to 5 years and provide for full payment of DHR's claim. Otherwise they most likely will be faced with paying DHR's claim, possibly with interest, at the end of their plan.

Perhaps the Court should have stopped after finding that DHR's claim was entitled to priority status. Nonetheless, as discussed above, such a finding appears to have raised additional issues that may need to be resolved if and when they are properly presented to the Court for consideration.

ORDER:

THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that the Contest of Claim (Doc. 39) filed by the Debtors is hereby OVERRULED, and Claim 14 filed by the State of Alabama

---

"disposable income" as used in Sections 1322(a)(4) and 1325(b)(1). Nonetheless, numerous authorities have not avoided the subject. See e.g., Chelsea Tulis, *Get Real: Reframing the Debate Over How to Calculate Projected Disposal Income in § 1325(b)*, 83 Am. Bankr. L.J. 345 (2009).

[9] *In re Dew,* 344 B.R. 655, 660-61 (Bankr. N.D. Ala. 2006).

Case 09-41866-JJR13    Doc 47    Filed 02/05/10    Entered 02/05/10 14:34:46    Desc Main
Document      Page 8 of 9

Department of Human Resources is allowed in its entirety and such claim is entitled to priority under Section 507(a)(1)(B). The foregoing shall constitute a judgment entered pursuant to Rule 9021.

Dated: February 5, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge